UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| JOSEPH McNULTY, ET AL., )<br>)<br>      PLAINTIFFS )<br>)<br>v. )<br>)<br>PAUL McDONALD, ET AL., )<br>)<br>      DEFENDANTS ) | CIVIL NO. 09-111-P-H |

### DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND TO COMPEL ARBITRATION

This is a dispute between the individual plaintiffs, Joseph A. McNulty, Michael J.K. Fleetwood, Arman Mouhibian, Robert E. Leib, and Carl Stubner, on the one hand, and the Portland law firm Bernstein, Shur, Sawyer & Nelson, P.A. ("Bernstein Shur") and one of its partners, Paul McDonald (collectively "the lawyers"), on the other hand. In 2005, the plaintiffs guaranteed the payment of legal fees to the lawyers for legal services rendered and to be rendered to two corporations Bee Load Ltd. ("Bee Load") and a company now known as Archangel-Masterrights, LLC ("Archangel"). The guarantors claim that the lawyers committed professional negligence, breach of fiduciary duty, and unintentional misrepresentation. They have asked for damages as well as for a declaratory judgment regarding the validity and construction of an agreement they signed. The lawyers have counterclaimed for attorney fees and expenses under that

agreement. But the lawyers have also moved to dismiss, asserting that the agreement makes all these disputes subject to compulsory arbitration.

I conclude that the disputes are subject to arbitration and **GRANT** the defendants' Motion to Dismiss Plaintiffs' Complaint and to Compel Arbitration (Docket Item 7). I do not address the merits of the dispute between the parties.

### BACKGROUND

In 2003, attorney Paul McDonald and Bernstein Shur undertook to represent Bee Load and Archangel in Maine state court with respect to Bee Load's claim against BBC Worldwide Limited ("the BBC") for breach of a contract involving music rights. Am. Compl. ¶¶ 16-19 (Docket Item 4).

In 2005, Bee Load, Archangel, and the lawyers entered into an engagement agreement (the "Agreement"), superseding their original 2003 engagement agreement. See Agreement (Ex. A to Am. Compl.) (Docket Item 4-2). This Agreement provided for a new and different fee arrangement for the legal services. Am. Compl. ¶ 23. The individual plaintiffs each signed the 2005 Agreement and jointly and severally guaranteed Bee Load and Archangel's obligations to Bernstein Shur under the terms of the Agreement—specifically including full payment of any fees owed. Id. ¶ 41. The 2005 Agreement also included an arbitration clause whereby the parties agreed to arbitrate any dispute between them that arose out of or related to the Agreement. Id. ¶¶ 44-45.

Although the lawyers pursued Bee Load's litigation against the BBC in Maine, the BBC successfully sued Bee Load in England, and obtained a judgment there against Bee Load. Id. ¶¶ 57-60. Bee Load filed for bankruptcy here in

2

Maine to insulate itself from the adverse judgment.[1] Id. ¶ 61. During the bankruptcy proceedings, the lawyers, with the bankruptcy court's approval, continued to represent Bee Load's interests against the BBC as special litigation counsel.[2] Id. ¶ 62. These efforts were ultimately unsuccessful. Id. ¶¶ 73-75.

This lawsuit then resulted. Jurisdiction is based on diversity of citizenship.

## ANALYSIS

In considering a motion to dismiss "[u]nder Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint." Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008). Here, the plaintiffs attached the 2005 Agreement as Exhibit A to their complaint. "Exhibits attached to the complaint are properly considered part of the pleading for all purposes, including Rule 12(b)(6)." Id. (internal quotation omitted). I therefore consider the text of the Agreement.[3]

To compel arbitration, the lawyers "must show, at a bare minimum, that the [plaintiffs] have agreed to arbitrate some claims." Brennan v. King, 139 F.3d 258,

---

[1] Bee Load is represented in bankruptcy proceedings by counsel other than Bernstein Shur. See In re Beeload Limited, No. 06-20074 (Bankr. D. Me.).
[2] See 11 U.S.C. § 327(e) (allowing, with the bankruptcy court's approval, "employ[ment], for a specified special purpose, other than to represent the trustee in conducting the [bankruptcy] case, an attorney that has represented the debtor").
[3] I treat the motion as a motion to dismiss, not a motion for summary judgment, and I do not rely upon the Affidavit of Joseph McNulty (attached to Pls.' Mem. in Opp'n to Dismiss (Docket Item 13)) in reaching this decision. However germane to the underlying merits of this dispute between the parties, the factual allegations contained in the affidavit are not relevant to the resolution of this motion. See Fed. R. Civ. P. 12(d); Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008) ("At the discretion of the district court, a motion to dismiss may be converted to a motion for summary judgment if the court chooses to consider materials outside the pleadings in making its ruling. . . . However, if the district court chooses . . . to ignore supplementary materials submitted with the motion papers and determine the motion under the Rule 12(b)(6) standard, no conversion occurs and the supplementary materials do not become part of the record for purposes of the Rule 12(b)(6) motion." (citations omitted)).

264 (1st Cir. 1998) (quoting McCarthy v. Azure, 22 F.3d 351, 354-55 (1st Cir. 1994)). The arbitration provision of the Agreement provides that:

> Any dispute with respect to the fees or expenses to be paid to [Bernstein Shur] between Clients [the companies] and/or Guarantors [the individual plaintiffs in this lawsuit] and [Bernstein Shur] shall, at the election of either party, be subject to arbitration under the procedures adopted by the Maine Board of Overseers of the Bar or such other arbitration procedure as to which Clients and [Bernstein Shur] may subsequently agree. *Any other dispute* between Clients and/or Guarantors and [Bernstein Shur] *that arises out of or relates to the Agreement or the services provided by [Bernstein Shur]* shall also, at the election of either party, be subject to binding arbitration in Portland, Maine under the commercial arbitration rules of the American Arbitration Association, or such other arbitration as to which we may subsequently agree. In any such arbitration the arbitrators shall be bound by and follow applicable substantive rules of law as if the matter were tried in court.

Agreement at 5 (emphasis added). A court should compel arbitration if the dispute between the plaintiffs and the defendants "is the sort of dispute that the parties agreed to arbitrate." Brennan, 139 F.3d at 264. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."[4] Id. (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)).

Here, there is no dispute that the disagreement between the parties falls under the language of the broad arbitration provision. See Defs.' Mot. to Dismiss & Compel Arbitration at 3; Pls.' Mem. in Opp'n to Dismiss (Docket Item 13).

---

[4] "[F]ederal policy favoring arbitration is not a free-standing ground upon which to remit parties to arbitration, but one that informs the court's interpretation." Brennan v. King, 139 F.3d 258, 266 n.8 (1st Cir. 1998); see Federal Arbitration Act, 9 U.S.C. § 1 et seq.

Instead, the plaintiffs contend that the entire 2005 Agreement is invalid or unenforceable—"null and void." See Pls.' Mem. in Opp'n to Dismiss at 11-12. They maintain that when the bankruptcy court approved Bernstein Shur's special representation of Bee Load as Debtor/Debtor-in-Possession in pursuing the litigation against the BBC, "that new arrangement constituted a discharge of the original Agreement" because Bernstein Shur "undertook to represent a distinct entity, the DIP [debtor-in-possession] Bee Load." Id. at 12. The plaintiffs argue that because the bankruptcy court did not affirm the 2005 Agreement as to all its signatories,[5] a novation occurred—a new contract was formed only as to the debtor in possession Bee Load and Bernstein Shur—and this new contract substituted for the 2005 Agreement, thereby releasing the plaintiffs from their guaranties and all other provisions of the 2005 Agreement. Id. at 11-12.

The plaintiffs are incorrect. The bankruptcy court's approval of Bernstein Shur as special litigation counsel for the debtor-in-possession Bee Load did not alter the Agreement as it applied to the individual plaintiffs, who were not subject to the bankruptcy court's protection.[6]

---

[5] The plaintiffs alternatively assert that because Bernstein Shur did not have the plaintiffs re-execute an agreement as guarantors after the bankruptcy court approved the lawyers as special litigation counsel for debtor-in-possession Bee Load, the plaintiffs cannot continue to be considered guarantors under the Agreement. Pls.' Mem. in Opp'n to Dismiss at 10.

[6] The plaintiffs also argue that by representing the debtor-in-possession Bee Load, an entity adverse to its creditor Archangel, Bernstein Shur necessarily abandoned Archangel as a client and principal obligor, thereby rendering the Agreement void. Pls.' Mem. in Opp'n to Dismiss at 11. Debtor-in-possession Bee Load, however, was only adverse to Archangel in the bankruptcy proceedings, *not* the BBC case. The bankruptcy court approved the lawyers' representation in the BBC case because they did "not represent or hold any interest adverse to the debtor [Bee Load]" with respect to that matter. See 11 U.S.C. § 327(e). Had the lawyers' representation of Archangel represented an interest adverse to the debtor-in-possession Bee Load, the bankruptcy court could not have appointed Bernstein Shur as special litigation counsel. As special litigation counsel
*(continued on next page)*

Discharge of a debt in bankruptcy generally does not affect a guarantor's liability, but leaves the creditor free to pursue collection of the debt from a guarantor. The Bankruptcy Code expressly provides that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). The First Circuit has interpreted this provision "as preserving the liability of a guarantor on the obligations of a debtor whose debts have been discharged in bankruptcy." F.D.I.C. v. Municipality of Ponce, 904 F.2d 740, 748 (1st Cir. 1990). Although the obligations of Bee Load under the Agreement were altered by the filing of bankruptcy, the obligations of the plaintiffs, guarantors under the Agreement, remained unchanged. Bernstein Shur, as creditor, was free to request payment from the guarantor-plaintiffs once Bee Load filed for bankruptcy. See id. at 747 (noting that when "the debtor filed for bankruptcy before the suit to enforce the guarantees was filed . . . , the lender . . . [was] not required to proceed first against the property of the principal debtor"); see also In re Airadigm Commc'ns, Inc., 519 F.3d 640, 656 (7th Cir. 2008) (stating that "a creditor can still seek to collect a debt from a co-debtor who did not participate in [a] reorganization—even if that debt was discharged as to the debtor in the plan" and "a third party could proceed against the debtor's . . . guarantor for liabilities incurred by the debtor even if the debtor cannot be held liable"); F.D.I.C. v. LaPierre, 144 B.R. 581, 585 (D. Me. 1992) (noting that where the "[d]efendant's guaranties were separate and independent contracts, distinct

---

pursuing the claim against the BBC, therefore, Bernstein Shur did not represent interests adverse
*(continued on next page)*

6

from those of the principal debtor," the "[p]laintiff need not have proceeded against [the principal debtor] in order to recover on the guarantees").  The Bee Load bankruptcy proceedings did not make the 2005 Agreement invalid or unenforceable with respect to these individual plaintiffs.

Since the bankruptcy proceedings involving Bee Load did not alter the individual plaintiffs' obligations under the 2005 Agreement, they remain bound by its compulsory arbitration of their dispute.  The claims and counterclaim at issue in this case indisputably "arise[ ] out of or relate[ ] to the Agreement or the services provided by [Bernstein Shur]."  See Agreement at 5; Defs.' Mot. to Dismiss & Compel Arbitration at 3; Pls.' Mem. in Opp'n to Dismiss.  Accordingly, without reaching the merits of the dispute between the parties, I hereby **GRANT** the defendants' motion to dismiss and to compel arbitration.

**SO ORDERED.**

**DATED THIS 7TH DAY OF JULY, 2009**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

to Archangel, and did not abandon Archangel thereby voiding the Agreement.